ORDER AND JUDGMENT *
HARRIS L. HARTZ, Circuit Judge.
Defendant Alfred Dutton pleaded guilty in the United States District Court for the District of Kansas to one count of possessing an unregistered destructive device. See 26 U.S.C. §§ 5861(d), 5871. In accordance with his plea agreement, he reserved his right to appeal the district court’s denial of his motion to suppress evidence seized from a storage unit. See Fed.R.Crim.P. 11(a)(2). On appeal he argues that the warrant authorizing the search of the storage unit was not supported by probable cause, and that the good-faith exception to the exclusionary rule does not apply because the warrant’s defect was so apparent that the officers who executed it lacked an objective good-faith belief that it was valid. See United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (establishing *816 good-faith exception to exclusionary rule). Following the clear precedent in United States v. Gonzales, 399 F.3d 1225 (10th Cir.2005), we agree. Nothing in the affidavit for the warrant connected Defendant to the storage unit. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse the denial of Defendant’s motion to suppress and remand for further proceedings.
I. BACKGROUND
In August 2011 Captain Leslie Lumley of the Greenwood County, Kansas, Sheriffs Department was contacted by Joe Scott, the boyfriend of Defendant’s ex-wife, who related several of his conversations with Defendant. The affidavit for the search warrant was based on those conversations. It stated:
Joe Scott came to the Greenwood county Sheriffs office to report that Alfred Dutton Jr. possibly had explosives. Scott said that on or about August 9th of 2011 he had gone to Dutton’s apartment to pick up a minor child per court visitation. While standing and talking with Dutton he produced a small cylindrical device about the size, Scott thought, of a triple A battery. Dutton asked if he knew what it was and when Joe said he didn’t Dutton told him it was a fuse for a hand grenade. During their talk Dutton had said he ordered fuses from the internet and when they arrived and found they were what he wanted he was then going to order Grenade hull’s and claymore mine hull’s because the fuse worked in either one. When Scott went to pick up the child on August 16th Dutton told him that he could not find the black powder he needed that [sic] to complete the devices and he had to order it from Cabela’s website on the Internet. Scott said when Dutton told him that he ordered the black powder he became concerned for safety reasons of the minor child and public safety of the resident’s [sic] around him in the apartment complex. Scott gave me a package of 20foot safety fuse and told me that Dutton had given it to him just after July 4th of 2010 to “blow stuff up” if he ever needed to. Scott has become concerned because Dutton has told him when the government starts to round up citizens he will be one of the first because of his military background.... Scott had left our office to pick up the minor child from the Dutton residence, after picking her up and taking her home he returned to our office and informed me that while at the Dutton apartment Dutton had asked if Scott had a drill press. Scott said that he did, Dutton advised that he would need to borrow it as he needed to drill and tap the grenade bodies so that he could plug them. Based on these facts I believe that Alfred Dutton Jr. has acquired items needed to build an Improvised explosive device for himself at his apartment or possibly in his storage unit.
R., Vol. 1 at 27-28 (emphasis added). The place to be searched under the warrant was described as follows:
Outback storage building unit number 6, located behind the Eureka Senior center at 209 N. Oak in Eureka, KS in Greenwood county. The Storage unit is accessed in the alley west of the Senior center. The storage units are off white in color with white garage style doors on the front. There is a visible number 6 above the North end unit.
Id. at 27.
The warrant application was presented to a state magistrate judge. Although Lumley later testified that he answered questions by the magistrate judge about the application, he could not recall what the questions were. After the magistrate judge issued the warrant, law-enforcement *817 agents searched the storage unit and seized six glass bottles containing homemade napalm, five of which were fully fused.
The government ultimately obtained a superseding indictment charging Defendant on two counts of possessing unregistered destructive devices, one count based on the items seized from the storage unit, and the other based on grenades seized from his apartment. Defendant moved to suppress the incendiary devices seized from the storage unit, arguing that the warrant application had not furnished probable cause to search the unit because “there is no reference in the affidavit as to how Captain Lumley comes to believe [Defendant] has a storage unit or how the ‘Outback storage building unit number 6’ is associated with [Defendant].” Id. at 28. The motion further argued that the affidavit was so lacking in probable cause that the good-faith exception to the exclusionary rule did not apply.
The district court denied the motion to suppress. It held that there was probable cause to issue the warrant to search the storage unit, because it was “reasonable to presume that if [Defendant] was building explosive devices in his home he also stored them in his storage unit.” Id. at 87. The court held in the alternative that even if the application failed to establish probable cause to search the storage unit, officers had acted in reasonable reliance on the warrant, and therefore the evidence was saved from exclusion by the good-faith exception of Leon.
Defendant then pleaded guilty to the count of the superseding indictment that charged possession of the incendiary devices recovered from the storage unit. He retained his right to appeal the denial of his motion to suppress. The government dismissed the other count.
II. DISCUSSION
“In reviewing a district court’s disposition of a motion to suppress, we accept the factual findings unless they are clearly erroneous, and review questions of law de novo. Whether a warrant is supported by probable cause and whether the Leon good faith exception applies are both questions of law.” Gonzales, 399 F.3d at 1228 (citations omitted). “It is well-settled that for probable cause to exist there must be a nexus between the contraband to be seized or suspected criminal activity and the place to be searched.” Id. (brackets and internal quotation marks). As for the good-faith exception, the Supreme Court has held that “reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate ... should be admissible in the prosecution’s case in chief’ even if the warrant turns out not to have been justified by probable cause. Leon, 468 U.S. at 913, 104 S.Ct. 3405. But reasonable reliance has its limits, and an officer fails to manifest the objective good faith necessary to trigger the exception “in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.” Id. at 923, 104 S.Ct. 3405 (internal quotation marks omitted).
The fatal flaw in the search warrant here is that the supporting affidavit does not connect the place to be searched — the storage unit — with Defendant. We have no quarrel with the concept that Defendant could reasonably be expected to keep explosives-related materials in his storage unit. What is missing, however, is any evidence that the storage unit to be searched was Defendant’s. The reference to “his storage unit” at the end of the affidavit was the first mention of any storage unit and it provided no reason to believe either that Defendant had a stor *818 age unit or that the unit described in the warrant was the one he owned.
Our decision in Gonzales is very much in point. After the defendant had been arrested for driving while intoxicated, a magazine with live ammunition was found in the car during an inventory search. The officers then discovered that the defendant had a prior felony conviction. They obtained a search warrant of a home to look for more firearms and ammunition. See Gonzales, 399 F.3d at 1227. We described the warrant and affidavit as follows:
The supporting affidavit identified “321 E. Church” as the place to be searched and detailed Mr. Gonzales’s accident and the resulting inventory search. The detective also stated that he had two years of law enforcement experience and that he “knows from Police training and experience that firearm [sic] are often kept at the residence as well as in vehicles.” However, the affidavit never specified that 321 E. Church was Mr. Gonzales’s residence or that there was any other connection between that location and Mr. Gonzales, the vehicle, or the suspected criminal activity. The affidavit also failed to specify who owned the vehicle.
Id. at 1227-28 (citation omitted). The government conceded that the affidavit did not provide probable cause for the search, but argued good faith. We rejected the argument, explaining:
For good faith to exist, there must be some factual basis connecting the place to be searched to the defendant or suspected criminal activity. When this connection is wholly absent, the affidavit and resulting warrant are “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.” Leon, 468 U.S. at 923, 104 S.Ct. 3405. Exclusion is appropriate in such circumstances because “reasonably well-trained” officers, exercising their own professional judgment, will be able to recognize the deficiency. Here, the warrant was “so lacking,” and the officer’s reliance upon it was not objectively reasonable.
Id. at 1231.
Here, too, there needed to be “some factual basis connecting the place to be searched to the defendant or suspected criminal activity.” Id. Because such a factual basis was missing, there was not a “minimal nexus between the place to be searched and the suspected criminal activity.” Id. The evidence seized from the storage unit should have been suppressed.
III. CONCLUSION
We REVERSE the district court’s denial of Defendant’s motion to suppress and REMAND for further proceedings.

 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.