**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 31, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

OMERO CORDOVA, a/k/a Omar L.
Cordova,

      Defendant - Appellant.

No. 14-6039
(D.C. No. 5:13-CR-00137-HE-1)
(W.D. Okla.)

_____

**ORDER**
_____

Before **MATHESON**, **McKAY**, and **MORITZ**, Circuit Judges.
_____

This matter is before the court, *sua sponte*, to correct page 6 of the Opinion issued

originally on July 6, 2015. The revised Opinion is attached to this order and shall issue

*nunc pro tunc* to the original filing date. The time deadline for filing any petition for

rehearing runs from the entry of the July 6, 2015, judgment and thus has expired.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

FILED
**United States Court of Appeals**
**Tenth Circuit**

**July 6, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA,
　　　Plaintiff - Appellee,

v.

OMERO CORDOVA, a/k/a
Omar L. Cordova,
　　　Defendant - Appellant.

No. 14-6039

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:13-CR-00137-HE-1)

J. Lance Hopkins of Tahlequah, Oklahoma for Appellant.

Sanford C. Coats, U.S. Attorney, and David McCrary and Edward J. Kumiega, Assistant
U.S. Attorneys, Oklahoma City, Oklahoma, for Appellee.

Before **MATHESON, McKAY,** and **MORITZ**, Circuit Judges.

**MORITZ,** Circuit Judge

　　　While executing a search warrant at Omero Cordova's home, law enforcement

found marijuana, firearms, and drug paraphernalia, and Cordova admitted ownership of

the items. Charged with various offenses, Cordova sought to suppress the evidence

against him. Although the district court agreed the affidavit failed to provide probable cause, it denied Cordova's motion to suppress under the good faith exception to the warrant requirement. The court also rejected Cordova's separate motion to suppress his statements, concluding his confession was voluntary. A jury subsequently convicted Cordova of all six charges against him. Cordova appeals, challenging the district court's denial of his motions to suppress the evidence and his statements.

Exercising jurisdiction under 28 U.S.C. § 1291, we reverse. We conclude the affidavit contained so few facts implicating either Cordova or his current home that a reasonable officer could not have relied on the warrant in good faith. Because the government conceded at oral argument that if the good faith exception doesn't apply then Cordova's statements must also be suppressed as fruit of the poisonous tree, we need not address Cordova's second issue and we remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

On October 16, 2012, Chris Gabeau—an Oklahoma City police detective assigned to a Federal Bureau of Investigation task force—sought a search warrant for Omero Cordova's home at 2412 S.W. 78th Street, Oklahoma City.

The first three pages of Detective Gabeau's affidavit contain general information about Gabeau, his qualifications and experience, and his conclusions regarding the traits and habits of drug dealers. The substantive portion of the affidavit begins on page four and is entitled "Details of Investigation." The first six paragraphs of those details contain information from an unidentified confidential source interviewed in October 2011, a year before the warrant's execution. The confidential source self-identified as a member of the

2

Juarito Gang, which is "heavily involved in narcotics trafficking" in the Oklahoma City area. The unnamed informant detailed specific sales of methamphetamine between the gang and "one of [its] main suppliers," Christopher Billingsley, within the previous two months. Oklahoma County Search Warrant Aff., Doc. 25-2, at 4. Notably, Cordova's name does not appear in the first six paragraphs of the substantive portion of the affidavit and the affidavit does not identify him as a member of the Juarito gang or as a participant in any of the sales the informant described.

The affidavit then switches gears and discusses an event that occurred some 21 months before the warrant's execution. According to the affidavit, state troopers discovered 70 pounds of marijuana in a vehicle bound for Oklahoma City in January 2011. The affidavit does not indicate who was driving the vehicle at the time of the traffic stop but states that law enforcement learned the marijuana "was supposed to be delivered *to 8008 S Youngs Blvd to a subject in a black [C]orvette*." Aff. at 4 (Emphasis added). According to the affidavit, Cordova had listed 8008 S. Youngs Boulevard in Oklahoma City as his address on an October 2011 police form on which he reported a burglary. The affidavit concludes this paragraph by indicating that on an unspecified date, officers observed a black Corvette registered to Christopher Billingsley parked outside the Youngs Boulevard address.

Turning to somewhat more recent events, the affidavit detailed that in January 2012, approximately nine months before the warrant's execution, Cordova purchased a residence at 2412 S.W. 78th Street, "using Cordova's mother . . . to actual [sic] purchase the home." Aff. at 4-5. The affidavit also indicated Cordova's mother purchased the

3

home from a member of a family known by law enforcement to be involved in selling methamphetamine, cocaine HCL, and marijuana. The affiant further advised that "it is not uncommon" for drug traffickers to conceal vehicle, cell phone, and home purchases by using family members as straw buyers to avoid law enforcement detection.

But the affiant provided no specific information regarding whether or when the individual who sold the home had been involved in drug trafficking, except to say that the affiant had reviewed "several documents from other agencies including but not limited to: Oklahoma City Police Department, Drug Enforcement Agency and so forth stating numerous surveillance hours, wire interceptions, [and] Confidential Informants purchasing controlled substance from the [] family DTO." Aff. at 5.

The affidavit also noted that law enforcement sporadically surveilled 2412 S.W. 78th Street during the summer and fall of 2012. Most notably, the affidavit indicated that approximately four months earlier, during the week of June 4, 2012, law enforcement officers watched as Billingsley drove up to the home in his black Corvette followed by a white Nissan Titan registered to Cordova. According to the affidavit, Billingsley got out of the car, opened the garage door, and then drove into the garage, shutting the door behind him. While the affidavit indicates that the Titan's "driver" left in a third car while Billingsley remained, it doesn't identify the driver of the Titan. Nor does it indicate whether anyone else was at the residence or how long Billingsley remained there.

Additionally, the affidavit identified five other dates in the three preceding months—July 26, July 30, September 21, September 24, and October 15—on which officers surveilled the 78th Street property. Those officers noted only that vehicles

4

registered to Cordova sometimes parked at the residence and that, on two occasions, a vehicle not registered to him parked at the house. Finally, the affidavit noted Billingsley had three non-drug convictions, two in 1993 and one in 1995. The affidavit identified one prior conviction for Cordova—an undated conviction for possessing a controlled substance.

Based on this information, on October 16, 2012, an Oklahoma state court judge found probable cause to issue a search warrant for Cordova's 78th Street home. State and federal law enforcement officers executing the warrant the following day discovered four firearms; more than $12,000 in cash; 123.7 grams of marijuana; and various items associated with distribution, including a box of plastic bags, a heat sealer, a digital scale, and a ledger.

Officers triggered Cordova's security system as they entered the residence, prompting the monitoring company to contact Cordova, who returned home. Officers immediately detained Cordova and a detective advised him that officers wanted to speak to him about guns and marijuana they had discovered in the search of his home. The detective also asked Cordova to contact his wife and request that she return home so officers could "determine [her] involvement." *Jackson v. Denno* Hr'g Tr., Doc. 116, at 13. Cordova responded that "[e]verything in the house [was his]"—a statement he reiterated after receiving his *Miranda* rights and signing a waiver. *Id.* at 13, 19, 23-24.

The United States indicted Cordova for distributing marijuana, possessing more than 130 grams of marijuana with intent to distribute, possessing firearms in furtherance of a drug trafficking crime, maintaining a place for using and distributing marijuana,

making a false statement to an Internal Revenue Service Agent, and money laundering. Cordova moved to suppress the physical evidence and his incriminating statements, arguing the affidavit did not provide probable cause for the warrant. The district court agreed but concluded the good faith exception applied and declined to suppress the evidence. The district court also denied Cordova's motion to suppress his confession after rejecting Cordova's argument that officers coerced his confession by impliedly tying his wife's liberty to Cordova's cooperation.

After a jury convicted Cordova as charged, the district court sentenced him to 156 months' imprisonment. This appeal followed.

## DISCUSSION

Cordova argues Gabeau's affidavit contained so little indicia of probable cause that no reasonable officer would have relied on it and that the district court erred in ruling otherwise. Cordova further contends police coerced his confession and that the district court should have suppressed his statements. Because the government did not challenge the district court's determination that the warrant lacked probable cause, we initially consider whether the officers could have reasonably relied on the warrant in good faith—a question of law we review de novo. *See United States v. Tuter*, 240 F.3d 1292, 1299 (10th Cir. 2001).

Although a search conducted pursuant to a warrant not supported by probable cause violates the Fourth Amendment, evidence discovered during such a search need not be suppressed so long as "'an officer acting with objective good faith obtain[ed] a search warrant from a detached and neutral magistrate and the executing officers act[ed] within

6

its scope.'" *See id.* at 1298-99 (quoting *United States v. Nolan*, 199 F.3d 1180, 1184 (10th Cir. 1999)). But this good faith exception doesn't apply if the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See United States v. Leon*, 468 U.S. 897, 922-23 (1984) (internal quotations and citations removed). An officer can't rely in good faith on an affidavit that is "bare bones" or "devoid" of factual support. *United States v. Corral-Corral*, 899 F.2d 927, 934 (10th Cir. 1990).

In arguing the affidavit in this case lacked any indicia of probable cause, Cordova focuses on the staleness of the information contained in the affidavit, particularly the information that 21 months before the affidavit's execution, officers learned that 70 pounds of marijuana was slated to be delivered to "a subject in a black [C]orvette" parked in front of Cordova's former residence. He also challenges the affidavit's failure to supply a nexus between criminal activity and the place to be searched—his current residence at the time the warrant was executed.

The government concedes that the information supporting the warrant was dated, but argues it was refreshed by more recent information implicating Cordova's current residence in an ongoing and continuous drug trafficking enterprise. Similarly, the government maintains that even though the marijuana was destined for a vehicle that Cordova did not own, which was to be parked in front of a house where Cordova no longer lived, the affidavit provided a nexus with his current residence because of Cordova's "ongoing relationship" with Billingsley and the fact that Cordova used a straw purchaser to buy his current home from someone involved in drug trafficking. Aplee. Br.

7

at 15-16.

But the parties' specific disputes obfuscate a more significant problem: while the affidavit may have provided some indication of Billingsley's involvement in an on-going drug enterprise and some weak information regarding Cordova's association with Billingsley, it was devoid of any facts supporting the inference that Cordova or his home were involved with Billingsley's—or anyone else's—ongoing drug enterprise.

In arguing for the good faith exception, the government relies primarily on a 21-month-old transaction involving a drug delivery that not only never occurred, but that even if it had occurred, was to involve delivery to an *unnamed subject* in a *vehicle* registered to *Billingsley*, parked in front of Cordova's *former* home. The affidavit contained no information indicating the delivery was to be made to Cordova or to Cordova's current address. Nor did it indicate that Cordova assisted in arranging the two-year-old transaction, knew the transaction was set to occur, or was even at his former home at the slated delivery time.

While dated information of an ongoing criminal enterprise may be relevant to a probable cause analysis, *see United States v. Shomo*, 786 F.2d 981, 984 (10th Cir. 1986), the isolated fact of an attempted drug delivery to a car parked in front of Cordova's former house 21 months before the warrant was issued provides neither evidence of *Cordova's* participation in such an ongoing enterprise nor evidence that his former home was being used in such an enterprise. In short, the nearly two-year-old information implicating Billingsley—but not Cordova or his home—is of little assistance to the government even under the deferential good faith analysis. *See United States v.*

8

*Campbell*, 603 F.3d 1218, 1233 (10th Cir. 2010) (concluding that although affidavit contained some dated information, officers did not unreasonably rely on warrant because affidavit recounted defendant's gang-related activity and criminal activity spanning nine years); *United States v. Craig*, 861 F.2d 818, 822-23 (5th Cir. 1988) (finding sufficient indicia of probable cause for reasonable reliance when affidavit provided evidence that defendant sporadically engaged in criminal activity over a thirteen-year period); *see also United States v. Mathis*, 357 F.3d 1200, 1207 (10th Cir. 2004) (concluding affidavit's information was not stale when evidence demonstrated defendant's ongoing criminal activity from 1999 to 2001).

As one of our sister circuits has explained, the use of a residence in a drug enterprise "is not inherently ongoing," but rather exists on a continuum from a single use of the home in dealing drugs to the use of the home as a "drug den." *See United States v. Hython*, 443 F.3d 480, 485-86 (6th Cir. 2006). At best, the affidavit here provided evidence of a single failed transaction slated to occur in front of Cordova's *former* home 21 months before law enforcement sought a warrant for Cordova's current home. Because this stale information cannot support a conclusion that Cordova's current home was an operation base for ongoing criminal activity, we conclude a reasonable officer would have accorded the warrant's keystone piece of information little to no weight.

The government also relies heavily on what it characterizes as Billingsley's "free access" to Cordova's current home. But this characterization considerably overstates the affidavit's assertions. The single connection the affidavit makes between Billingsley and Cordova's current home involves an event that occurred four months prior to the

9

affidavit's execution. Specifically, in June 2012, law enforcement officers observed Billingsley drive up to Cordova's current home followed by an individual in a vehicle registered to Cordova. The affidavit indicates that Billingsley opened the garage, drove inside the garage, and shut the door. Nothing in the affidavit indicates Billingsley had unfettered access to the interior of the home. Further, even coupled with the dated information of Billingsley's attempted drug transaction in front of Cordova's former home, this single observation falls short of supporting even an inference that Billingsley was using Cordova's current residence as a drug den for ongoing trafficking activities.

Put simply, the government's argument relies largely on two pieces of information. One is not only dated but fails to implicate either Cordova or Cordova's former residence, let alone the place for which the warrant was sought. The other, while at least involving the place for which the warrant was sought, is an isolated incident that fails to show Cordova allowed Billingsley to use his home for purposes of Billingsley's drug enterprise. These two isolated incidents not only fail to provide probable cause but, even when considered with the information discussed below, they fail to provide any indicia of probable cause.

What remains of the government's argument rests on the affidavit's suggestion that Cordova used his mother as a "straw purchaser" for his home to avoid discovery of his drug dealings. While we defer to law enforcement's expertise on whether innocent facts might indicate criminal activity, that deference is not without its limits. The affidavit indicates that it is common for drug traffickers to use family members to conceal large purchases, and then simply states that Cordova's mother purchased his current

home. Thus, the affidavit implies without concluding that Cordova used his mother as a straw purchaser to conceal the purchase. But without other information implicating Cordova or his home in criminal activity, the officer's suggestion that Cordova engaged in an activity sometimes associated with criminals is sheer speculation and of minuscule value.

Finally, the government tacitly acknowledges that the affidavit's remaining information doesn't substantially further its cause. While the affidavit identifies Billingsley's prior criminal history, that history is quite dated—occurring in the mid-90s—and was unrelated to drug activity. Even more to the point, the affidavit identified only a single prior conviction for Cordova—an undated conviction for mere possession, not distribution. *Cf. United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972) (noting that the value of a "mere isolated violation" diminishes quickly whereas evidence of a course of conduct does not); *see also United States v. Potts*, 586 F.3d 823, 830 (10th Cir. 2009) (stating that information about possessing child pornography was not stale because such material is likely to be "hoard[ed]"). Similarly, the government doesn't even suggest there is any significance to the affidavit's only real reference to what the district court termed "more recent matters"—namely, law enforcement's surveillance of Cordova's current residence on approximately seven days over a five-month period. As the district court pointed out, that surveillance was less than enlightening, revealing only officers' "verif[ication] Mr. Cordova's car was parked in his own driveway."

While the good-faith exception is broad, it is not boundless. Boiled down, the affidavit at issue here indicated nothing more than that a high-volume drug delivery was

11

set to be made to a vehicle parked in front of Cordova's former home nearly two years before officers sought a warrant for his current home and that one party to that drug deal was present at Cordova's current residence on one occasion four months before the warrant was executed. Not only does this information fail to provide probable cause, it is so removed from implicating Cordova or his current residence that it amounts to nothing more than a hunch. *See United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004) (pointing out that while a court must look at the totality of the circumstances rather than engage in a "divide-and-conquer" analysis, it may not "arrive at probable cause simply by piling hunch upon hunch" (internal citation and quotation removed)).

## CONCLUSION

Given the sparse connection between Cordova's current home and ongoing or recent criminal activity, we conclude officers acted unreasonably in relying on the affidavit and we reverse the district court's ruling. And because the government conceded at oral argument that if we concluded officers did not rely on the affidavit in good faith then Cordova's subsequent statements were fruit of the poisonous tree, we also reverse the district court's decision denying Cordova's motion to suppress his statements.