FILED
United States Court of Appeals
Tenth Circuit

February 11, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LEE CHARLES SMITH, II,

    Defendant - Appellant.

No. 20-5006
(D.C. No. 4:19-CR-00169-GKF-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MURPHY**, and **BACHARACH**, Circuit Judges.
_____

Defendant-Appellant Lee Charles Smith, II, pleaded guilty to one count of damaging an energy facility, in this case oil pumping rigs, in violation of 18 U.S.C. § 1366(b).[1] His guilty plea was the result of evidence obtained after police executed a search warrant and installed a GPS tracker on his vehicle. Smith filed a motion to suppress, arguing that the affidavit in support of the application for the search warrant

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] "Whoever knowingly and willfully damages or attempts to damage the property of an energy facility in an amount that in fact exceeds or would if the attempted offense had been completed have exceeded $5,000 shall be punishable by a fine under this title, or imprisonment for not more than five years, or both." 18 U.S.C. § 1366(b).

failed to establish probable cause. Smith also filed a motion for a *Franks* hearing, arguing that the affidavit was based on the allegations of a confidential informant whose reliability and criminal history were not set forth in the affidavit. The district court relied on *Leon* to deny Smith's motion to suppress, finding that although probable cause was a close question, the officers executing the warrant did so in good faith. The district court also denied Smith's motion for a *Franks* hearing. Smith entered a conditional plea agreement and now appeals the denial of both motions. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's rulings.

## I

A maroon 2004 Chevrolet pickup truck that was allegedly in the control and custody of Smith was the focus of the search warrant at issue here. Investigator Terry York prepared an affidavit seeking a search warrant to install a GPS tracking device on that truck. Relying on information provided by a person he described as a "Confidential Reliable Informant" (CRI), York's affidavit included the following information.[2]

In 2018, York was investigating "ongoing oilfield thefts" in western Osage County, Oklahoma. ROA, Vol. I at 31. Along with other deputies in the Osage County Sheriff's office, York "ha[d] compiled information regarding the 2004 Chevrolet operated by Lee Smith and the use of the vehicle during the commission of

---

[2] The affidavit did not set forth in any detail the reliability of the CRI. Although also not stated in the affidavit, the parties have now stipulated that the CRI has a criminal record.

2

crimes." *Id.* On June 18, 2018, the Sheriff's office received reports of a "stolen pipe trailer with 1500 feet of pipe on it." *Id.* The CRI told York that Smith had taken the trailer and sold the pipe for $1500. On September 7, 2018, the Sheriff's office received a report that a Continental motor had been stolen from Jehiah Resources. The CRI claimed this motor was "in the possession of Smith." *Id.* A few days later, the CRI informed York that "Smith had committed numerous oilfield thief's [sic] in and around Osage County, to include motors, pumps, equipment, pipe, transformers and other oilfield related items." *Id.*

The CRI later took "officers," presumably including York, to "a location in rural Osage County where Smith would store stolen items." *Id.* Officers observed three items at this site: (1) "a large centrifugal pump commonly used by drilling rigs" that "[wa]s believed to have come from the Little Chief area"; (2) "an Oxygen bottle that was confirmed stolen"; and (3) "[a] red pick-up truck that was previously used by Smith." *Id.* Both parties, and the district court below, agreed that the red truck at this site was not the maroon truck that was the subject of the warrant. After the visit to this site, the Sheriff's office received a report on September 13, 2018 of a stolen Continental engine from a well site near the Bluestern Ranch.

York concluded his affidavit by referencing Smith's "criminal history [of] felony convictions for Oilfield thief [sic]," and giving the exact address where the maroon 2004 Chevrolet truck was located, along with the truck's VIN number. *Id.* at 32. York then stated he believed "that the aforementioned vehicle is being used to transport stolen oilfield equipment, along with being used during a large number of

oilfield thief's [sic] within Osage County," and that the requested tracking device would lead to "the location of the thefts, persons committing the thefts[,] and the location of stolen property." *Id.* An Oklahoma state district court judge in Osage County authorized the warrant, which was then localized by a judge of the Osage Nation Tribal Court.

Although it is not exactly clear who executed the warrant, a GPS tracking device was placed on the maroon 2004 Chevrolet truck. York's subsequent review of the location data created by the GPS placed the truck at "a rural location in Osage County" where an oil pump was missing, and later at a business where the missing pump was found. *Id.* at 95–96. The owner of the business where the pump was found informed York that he had purchased the motor from Smith. Smith was then arrested and charged in state court. He was indicted in the United States District Court for the Northern District of Oklahoma on August 6, 2019 on six counts of damaging an energy facility in violation of 18 U.S.C. § 1366(b).

Smith moved to suppress the evidence obtained from the search warrant, arguing that York's affidavit failed to establish probable cause. In addition, Smith argued that material omissions in York's affidavit regarding the reliability of the CRI justified a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). Before the government responded, the district court granted the motion for a *Franks* hearing. The government then opposed suppression of the evidence, arguing that there was probable cause, or in the alternative, that the good-faith exception under *United*

4

*States v. Leon*, 468 U.S. 897 (1984), applied. The government also asked the court in supplemental briefing to deny the *Franks* hearing it had previously ordered.

The district court responded in a written order by describing its prior ruling as "inadvertent[]" and then denying the motion for a *Franks* hearing. ROA, Vol. I at 99. The district court found that "while historical information regarding the CRI's veracity, reliability, and basis of knowledge is wanting, the tip was corroborated by police in that they found stolen oilfield equipment and a truck defendant had previously used on the site identified by the CRI." *Id.* Although "[w]hether that corroboration supports probable cause may be a close question," the district court nevertheless concluded that "the omission of additional information [about the CRI's reliability and criminal history] does not rise to a 'deliberate falsehood' or 'reckless disregard,'" as required to justify a *Franks* hearing. *Id.* Thus, the district court determined that Smith failed to meet his burden and was not entitled to a *Franks* hearing.

Smith moved for reconsideration of the district court's *Franks* ruling and the district court denied the motion at a subsequent hearing. The district court also then addressed the motion to suppress:

> As the court stated in its previous order denying the *Franks* hearing, probable cause here is a close call. The defendant has a strong argument here that the affidavit supporting the search warrant doesn't provide a sufficient nexus between the alleged oil thefts and defendant's 2004 Chevrolet.
> The affiant did not provide the magistrate judge or the . . . tribal judge with any facts tying the defendant's use or ownership. Specifically, the affiant states that the truck is "operated by Smith not owned by him" but the affiant doesn't provide the judges with facts

5

tying the defendant's use of the 200[4] Chevrolet to criminal acts. *However, the affiant had conducted an investigation that tied defendant to the crimes and defendant to the truck.*

And as I read *United States v. Roach*, a Tenth Circuit case from 2009, 582 F.3d 1192, as long as the affiant had conducted an investigation that revealed[] facts in this case tying the 2004 Chevrolet to defendant's alleged oil field thefts, it would not be entirely unreasonable to rely on the decision of the two judges in this case to authorize the placement of the tracking device. So this court concludes that *Leon* applies and the motion to suppress is denied.

*Id.*, Vol. II at 19–20 (emphasis added).

Smith later pleaded guilty to one count of damaging an energy facility. The plea was conditional, reserving Smith's right to appeal the district court's denial of his motion to suppress and his motion for a *Franks* hearing. Smith has filed a timely appeal.

## II

Smith argues on appeal that the search warrant at issue was not supported by probable cause and that the good-faith exception under *Leon* does not apply, describing York's affidavit as "bare bones." Smith further contends that the omission of the CRI's criminal history from the affidavit justifies a *Franks* hearing. We disagree on both fronts. The affidavit provides enough information to supply a minimal nexus between the maroon truck and the crime alleged, justifying the officer's[3] good-faith reliance on the probable cause determination of two judges. Because we conclude that the good-faith exception under *Leon* applies, the district

---

[3] As mentioned above, it is unclear who executed this warrant.

6

court's denial of the motion for a *Franks* hearing is also necessarily correct. We address each of Smith's arguments in turn.

**A**

"In reviewing suppression motions, courts have the discretion to proceed directly to an analysis of the good-faith exception [under *Leon*] without first addressing the underlying Fourth Amendment question." *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000). We employ that discretion here to proceed directly to the district court's determination that the good-faith exception applies—a question of law that we review de novo. *United States v. Knox*, 883 F.3d 1262, 1268 (10th Cir. 2018).

We begin with some of the basic tenets set forth in *Leon*. The underlying purpose of the exclusionary rule is to deter illegal actions by law enforcement officers. It follows then that this purpose is not met where officers do not act independently but rely on a neutral magistrate's issuance of a warrant. This is because "[j]udges and magistrates are not adjuncts to the law enforcement team; as neutral judicial officers, they have no stake in the outcome of particular criminal prosecutions." *Leon*, 468 U.S. at 917. In *Leon*, "the Supreme Court concluded that when a law enforcement officer relies in objective good faith on a warrant issued by a detached and neutral magistrate . . . evidence obtained as a result of that reliance should not be subject to suppression." *Knox*, 883 F.3d at 1273. Therefore, "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is

7

technically sufficient." *Leon*, 468 U.S. at 921. With this in mind, "[w]e presume an officer's acts to be in objective good faith when supported by a warrant." *United States v. Henderson*, 595 F.3d 1198, 1201 (10th Cir. 2010).

Nevertheless, in establishing the good-faith exception to the exclusionary rule, the Supreme Court laid out four situations where "[s]uppression . . . remains an appropriate remedy" despite a magistrate's issuance of a search warrant. *Leon*, 468 U.S. at 923. First, "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.* (citing *Franks*, 438 U.S. at 154). Second, "where the issuing magistrate wholly abandoned his [or her] judicial role." *Id.* Third, where the warrant is based on an affidavit that is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (citation omitted). And fourth, where "a warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.*

None of those situations is presented here. As the affiant, York made no false representations in the affidavit that would have misled the issuing judges, nor did he demonstrate a reckless disregard for the truth. Further, the two judges who issued the warrant here did not wholly abandon their judicial roles, nor was the warrant so facially deficient that it failed to specify the place or thing to be searched. And contrary to Smith's contentions, we conclude the affidavit was not "so lacking in

8

indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.*

Our cases establish that "[a]n affidavit lacks indicia of probable cause when it does not contain factual support." *United States v. Chambers*, 882 F.3d 1305, 1310 (10th Cir. 2018). But "[t]he affidavit does not have to be a model of specificity" to justify good-faith reliance. *Id.* at 1311. "When we consider whether the officer relied in good faith upon a warrant, we must look to the underlying documents to see whether they are *devoid* of factual support, not merely whether the facts they contain are legally sufficient." *Id.* at 1310–11 (quoting *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985)). As the district court found, the affidavit here was not devoid of factual support as it provided information tying the truck and its operator to stolen oil field equipment. The district court thus correctly determined that *Leon*'s good-faith exception applied.

In deciding that the good-faith exception applied, the district court relied on our decision in *United States v. Roach*, which upheld the denial of a suppression motion because the affidavit at issue established a "minimal nexus" between the place to be searched and suspected criminal activity. 582 F.3d 1192, 1204–05 (10th Cir. 2009). In that case, officers applied for a warrant to search what they believed was the defendant's residence. *Id.* at 1202. But the affidavit in support made only a general statement describing several investigatory methods that identified the residences of several different individuals of interest, including the defendant's. *Id.* at 1202–03. We held that the affidavit did not establish probable cause because it did

9

not specifically set forth which method tied the defendant to the place to be searched, and therefore prevented a magistrate from independently determining the success of that method. *Id.* at 1203. Nevertheless, the affidavit established at least one method that provided a "minimal nexus" between the defendant and the place to be searched, making it "not . . . entirely unreasonable . . . for officers executing the warrant to rely on the magistrate's authorization of it." *Id.* at 1204.

From *Roach*, the district court gleaned the principle that "as long as the affiant had conducted an investigation that revealed[] facts in this case tying the 2004 Chevrolet to [Smith]'s alleged oil field thefts, it would not be entirely unreasonable to rely on the decision of the two judges in this case to authorize the placement of the tracking device." ROA, Vol. II at 19–20. Applying that principle, the district court determined that "the affiant had conducted an investigation that tied [Smith] to the crimes and [Smith] to the truck." *Id.* at 19. Thus, there was a "minimal nexus" between the maroon truck and the suspected criminal activity to support the good-faith exception.

Pointing to our decision in *United States v. Cordova*, 792 F.3d 1220 (10th Cir. 2015), Smith argues on appeal that the affidavit did not establish even a "minimal nexus" between the maroon truck and the suspected criminal activity. In *Cordova*, we reversed a district court's finding of good faith where "the affidavit at issue . . . indicated nothing more than that a high-volume drug delivery was set to be made to a vehicle parked in front of Cordova's former home nearly two years before officers sought a warrant for his current home and that one party to that drug deal was present

10

at Cordova's current residence on one occasion four months before the warrant was executed." 792 F.3d at 1226. We determined that this information "[wa]s so removed from implicating Cordova or his current residence that it amounts to nothing more than a hunch." *Id.*

Although the present case falls somewhere in between *Roach* and *Cordova*, we believe the affidavit here is closer to the affidavit in *Roach*. To be sure, as was the case in *Roach*, York's affidavit did not explicitly lay out an investigatory basis that tied the maroon truck to Smith. But the affidavit certainly provided more than a "hunch" of the kind we found lacking in *Cordova*. The information contained in the affidavit here—especially facts such as the VIN number of the maroon truck and the exact address where the truck could be located—implies that some investigation had to have occurred to obtain this information. And with the affidavit's description of officers visiting the site where the CRI said Smith stored his stolen goods and where officers saw confirmed stolen oilfield equipment and a truck Smith was known to have used, there is enough information here to supply a "minimal nexus" between the place to be searched and the suspected criminal activity.

The dissent's contrary conclusion that the good-faith exception does not apply reads more like a do-over of the issuing judges' probable cause determination. But "[w]hen a warrant has issued, the legal sufficiency of the underlying affidavit has already been determined by the magistrate, and the magistrate's determination is entitled to credence." *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985). The appropriate inquiry then for the good-faith exception is not the legal sufficiency

11

of the affidavit, but "whether a 'reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Gonzales*, 399 F.3d 1225, 1230 (10th Cir. 2005) (quoting *Leon*, 468 U.S. at 922 n.23). In our view, the dissent's probable cause analysis bleeds into its analysis of the good-faith exception, improperly conflating the legal sufficiency of the affidavit with the application of the good-faith exception. *See* Dissent at 11 (faulting York for not "identify[ing] the confirming officers or say[ing] how they had confirmed the theft" of the stolen oxygen bottle and for stating that the red truck at the site had been used by Smith, but not stating "who had verified this use or how this use had been verified"). This approach incorrectly frames the analysis under *Leon*. "It is only when [an officer's] reliance was wholly unwarranted that good faith is absent." *Cardall*, 773 F.2d at 1133.

Additionally, the dissent's reliance on *United States v. Gonzales*, 399 F.3d 1225, 1230 (10th Cir. 2005), is misplaced for two reasons. First, *Gonzales* is distinguishable. There, the only purported link between the defendant and the place to be searched—the officer's generic statement that, in his experience, firearms are often kept at the residence—"was not supported by any facts establishing the residence belonged to or was otherwise linked to [the defendant]." *Gonzale*s, 399 F.3d at 1231 (emphasis added). That is plainly not the case here; the affidavit contains more than a single generic statement from York. Second, while our decision in *Gonzales* is binding precedent, we must read that decision in harmony with the Supreme Court's decision in *Leon*. In our view, the dissent stretches *Gonzales* too far

12

and impermissibly pushes *Leon* out of the picture. *See United States v. Dutton*, 509 F. App'x 815, 818 (10th Cir. 2013) (Anderson, J., concurring) ("*Gonzales* may have unintentionally restricted the application of the good faith exception established in . . . *Leon*." (citation omitted)).

We agree with the district court that the officer executing the warrant did so in good-faith reliance on two judges' individual approval of the application for the warrant. Accordingly, *Leon*'s good-faith exception applies and the motion to suppress was properly denied.

**B**

The standard of review for the denial of a *Franks* hearing has not been clearly set forth in this circuit. *See United States v. Moses*, 965 F.3d 1106, 1110 (10th Cir. 2020).

Under *Franks*, "[w]e exclude evidence discovered pursuant to a search warrant when (1) a defendant proves by a preponderance of the evidence 'the affiant knowingly or recklessly included false statements in or omitted material information from an affidavit in support of a search warrant and (2) . . . after excising such false statements and considering such material omissions . . . the corrected affidavit does not support a finding of probable cause.'" *United States v. Campbell*, 603 F.3d 1218, 1228 (10th Cir. 2010) (quoting *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008)). "If a defendant makes a 'substantial preliminary showing' that both of these elements exist," they are entitled to a *Franks* hearing. *Moses*, 965 F.3d at 1110 (quoting *Franks*, 438 U.S. at 155). But the defendant must make "more

13

than mere allegations of defects in a warrant." *Id.* "A defendant must produce evidence of the complained-of defects by offering '[a]ffidavits or sworn or otherwise reliable statements of witnesses.'" *Id.* (quoting *Franks*, 438 U.S. at 171).

As set forth above, one of the recognized situations in *Leon* where suppression may still be appropriate even after officers have obtained a warrant is "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." 468 U.S. at 923 (citing *Franks*, 438 U.S. at 154). Having concluded in our analysis of the good-faith exception that such a false representation or reckless disregard for truth did not occur here, there is necessarily no basis for a *Franks* hearing. *United States v. Ingram*, 720 F. App'x 461, 463 (10th Cir. 2017) ("A *Franks* hearing, after all, is just another way to gain the protection of the Fourth Amendment's exclusionary rule.").

At any rate, the district court was correct that Smith failed to carry his burden in his request for a *Franks* hearing. Smith provided no affidavits or sworn statements of witnesses alleging that the omission of the CRI's criminal history from the affidavit was a deliberate falsehood or made with reckless disregard for the truth. Like the arguments he made before the district court, Smith's appellate arguments for a *Franks* hearing discuss only the affidavit's alleged defects, which relate to the probable cause and good-faith issues. Tellingly, Smith's brief argues that "[a] *Franks* hearing was the only way . . . [to] establish the details of the conceded omissions about [the CRI's] criminal history. Those details had a direct bearing on the ultimate

14

question of whether the Affiant intentionally or recklessly disregarded the truth."

Aplt. Br. at 29. But the information that could be gleaned from a *Franks* hearing cannot be the basis for granting a *Franks* hearing. And we have previously held that a magistrate's learning of an informant's criminal history likely would not, on its own, have any bearing on a probable cause determination. *United States v. Avery*, 295 F.3d 1158, 1168 (10th Cir. 2002). After all, many informants who have access to information regarding criminal activity have criminal backgrounds themselves. Accordingly, the district court properly denied Smith's motion for a *Franks* hearing.

## III

For those reasons, we AFFIRM the district court's denial of the motion to suppress and denial of the motion for a *Franks* hearing.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

*United States v. Lee Charles Smith II*, No. 20-5006, Bacharach, J., dissenting.

This case grew out of a warrant that allowed officers to put a tracking device on a maroon truck, leading to evidence implicating Mr. Lee Smith in oilfield thefts. The government obtained the warrant based on an affidavit by Investigator Terry York.

Mr. Smith moved to suppress evidence obtained through the tracking device, arguing that the affidavit had not established probable cause. The district court denied the motion.

On appeal, Mr. Smith again challenges the validity of the warrant. In addressing this challenge, the majority affirms based on the good-faith exception to the exclusionary rule. I respectfully dissent because

- Investigator York's affidavit does not supply probable cause and

- an officer executing the warrant could not reasonably rely on the finding of probable cause.

## I.     The affidavit does not establish probable cause.

In considering the sufficiency of a warrant for a tracking device, we engage in de novo review. *See United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009). In engaging in de novo review, we must determine whether the warrant is supported by "*facts* demonstrating probable cause, not police summaries of what they have concluded from such facts." *Id.*

at 1203 (emphasis in original). In my view, Investigator York's affidavit contains no facts connecting the truck to Mr. Smith or the suspected thefts.

**A.    The affidavit must contain facts connecting the maroon truck to a crime.**

Probable cause exists only if the affiant connects the "suspected criminal activity and the place to be searched." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000) (quoting *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990)). The place to be searched here was the maroon truck that officers hoped to track. So probable cause would exist only if the affidavit contained facts connecting the truck to the oilfield thefts.

But the affidavit does not mention any facts connecting the truck to the thefts. Instead, Investigator York simply said that he believed that the truck was being used to transport stolen equipment, relying on the compilation of unspecified information about the truck's use during the thefts. Investigator York's statements reflect conclusions, not facts.

The government argues that a judge could reasonably infer that Mr. Smith had needed to use a truck because the stolen equipment would have been heavy. But this argument would apply equally to any vehicle capable of moving heavy items. The weight of the stolen equipment could create probable cause only if some facts connect

- the oilfield thefts to Mr. Smith and

2

- Mr. Smith to the truck.

No such facts appear in the affidavit.

### B. The confidential informant's information did not connect the oilfield thefts to Mr. Smith.

Instead of facts for these connections, Investigator York relied on a confidential informant.[1] The informant had told officers that Mr. Smith was responsible for several thefts. If the informant were reliable, these statements might have supported probable cause. *United States v. Long*, 774 F.3d 653, 660 (10th Cir. 2014). But the affidavit contains no information about the informant's reliability.

Without this information, the affidavit could still support probable cause if (1) the affidavit were to show corroboration of the informant's account or (2) the informant had shown unique knowledge about the crimes. *See Danhauer*, 229 F.3d at 1006 (corroboration); *Massachusetts v. Upton*, 466 U.S. 727, 731–32 (1984) (informant knew about a related hotel raid that had occurred just three hours earlier); *United States v. Brown*, 984 F.2d 1074, 1076–77 (10th Cir. 1993) (informant specifically described items found by officers at the location to be searched). These circumstances did not exist here.

---

[1] The affidavit also stated that Mr. Smith had been convicted of oilfield thefts in the past. But the existence of a prior conviction does not establish probable cause for suspicion involving a new crime. *See United States v. Tuter*, 240 F.3d 1292, 1297 (10th Cir. 2001); *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000).

3

The affidavit does not refer to any corroboration of the informant's accusation against Mr. Smith. The affidavit states that officers accompanied the informant to a location where Mr. Smith allegedly stored stolen items, and this location did contain oilfield equipment. But the presence of that equipment did not corroborate Mr. Smith's involvement in any thefts. *See United States v. Tuter*, 240 F.3d 1292, 1298 (10th Cir. 2001) (stating that officers' corroboration of an anonymous tipster's knowledge of innocent, readily observable facts did not support veracity of the tipster or link the suspect to criminal activity).

The government points out that the affidavit refers to confirmation that an oxygen tank at the location had been stolen. But the affidavit does not

- say how the theft was confirmed or by whom or

- say whether the informant identified any particular items that would be found.

The affidavit also asserts that another vehicle, which Mr. Smith had used, was at the location. But the affidavit does not say why Investigator York believed that Mr. Smith had used the vehicle.[2]

---

[2] Counsel for the government conceded that this vehicle (a red truck) had differed from the maroon truck that officers wanted to surveil with the tracking device.

4

**C.      The affidavit supplies no factual basis for asserting that Mr. Smith used the maroon truck**

In addition, the affidavit asserts that Mr. Smith used the maroon truck; but the affidavit does not supply any facts for this assertion. So even if Investigator York had adequately connected Mr. Smith to the thefts, the affidavit would not have supplied probable cause to track the maroon truck.

* * *

The affidavit does not connect Mr. Smith, the maroon truck, and the oilfield thefts by

- corroborating the informant's accusation against Mr. Smith or

- providing any facts linking Mr. Smith to the maroon truck or to the thefts.

The affidavit thus does not supply probable cause.

## II.      The good-faith exception does not apply.

Despite the absence of probable cause, we must consider the good-faith exception. This exception prevents exclusion of evidence when an officer reasonably relies on a warrant that is later invalidated. *United States v. Leon*, 468 U.S. 897, 922 (1984). In my view, this exception does not apply.

### A.      Our review is de novo.

Though the district court applied the exception, we must conduct de novo review. *United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir.

5

2009). In conducting de novo review, we must reverse if the affidavit underlying the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000) (quoting *Leon*, 468 U.S. at 923).

**B.    The affidavit contains no facts connecting Mr. Smith to the maroon truck.**

An officer's belief in probable cause is reasonable only if the supporting affidavit sets out a factual basis to connect a place to the suspect or the suspected crime. *United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005). But Investigator York's affidavit contains no information about how officers had connected the maroon truck to Mr. Smith or the oilfield thefts. *See* pp. 2–5, above. Indeed, the district court acknowledged that the affidavit doesn't provide any facts tying Mr. Smith to the maroon truck:

> The affiant did not provide the magistrate judge or the . . . tribal judge with any facts tying the defendant's use or ownership. Specifically, the affiant states that the truck is "operated by Smith not owned by him" but the affiant doesn't provide the judges with facts tying the defendant's use of the [truck] to criminal acts.

R. vol. 2, at 19.

The absence of a factual connection is fatal under *United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005). There we declined to apply the good-faith exception because the officer's affidavit contained no facts

6

connecting the residence to be searched with either the defendant or any criminal activity. *Id.* at 1231. Similarly, the affidavit here contains no facts connecting the maroon truck to Mr. Smith or the oilfield thefts.

The majority argues that (1) *Gonzales* is distinguishable and (2) we've "stretch[ed]" this opinion too far, "push[ing] *Leon* out of the picture." Maj. Op. at 12–13. I respectfully disagree with both arguments.

The majority points out that the *Gonzales* affidavit contained only the officer's conclusion, based on his experience, that firearms are often kept at the residence. The majority views the affidavit here as different because Investigator York provided "more than a single generic statement." *Id.* Let's assume that the majority is right. The problem remains that Investigator York didn't provide any facts, and the majority doesn't suggest otherwise.

Investigator York did say that officers had "compiled information" about Mr. Smith's use of the maroon truck. But the affidavit doesn't identify that information, just as in *Gonzales*, the officer did not identify any facts connecting the defendant and the place to be searched. The problem, both in *Gonzales* and in our case, is that the affiants rested solely on conclusions, providing no facts.

The majority also argues that I am "stretch[ing]" *Gonzales*, pushing *Leon* "out of the picture." Maj. Op. at 12–13. But the majority does not say how I am stretching *Gonzales*. There we said:

7

> For good faith to exist, there must be *some* factual basis connecting the place to be searched to the defendant or suspected criminal activity. When this connection is wholly absent, the affidavit and resulting warrant are "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923, 104 S. Ct. 3405. Exclusion is appropriate in such circumstances because "reasonably well-trained" officers, exercising their own professional judgment, will be able to recognize the deficiency.

*United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005) (emphasis in original). Regardless of whether we agree with *Gonzales*, it is our precedent and we must follow it.

The majority instead questions the correctness of *Gonzales*, pointing to a single-judge concurrence in a non-precedential opinion: *United States v. Dutton*, 509 F. App'x 815, 818 (10th Cir. 2013) (Anderson, J., concurring) (unpublished). There a judge suggested that *Gonzales* might have unduly restricted the good-faith exception. *Id.* Even there, however, the concurring judge recognized the need to apply *Gonzales* because it "seem[ed] to dictate" the unavailability of the good-faith exception. *Id.* The lead opinion did the same, applying *Gonzales* because

- the warrant authorized search of a storage unit and

- there was no fact indicating that the storage unit was the defendant's.

*Dutton*, 509 F. App'x at 818 (lead opinion); *see also Poolaw v. Marcantel*, 565 F.3d 721, 734 (10th Cir. 2009) (relying in part on *Gonzales* in denying qualified immunity in a suit arising from the execution of a search warrant

8

because the supporting affidavit did not provide a nexus between the criminal activity and the place to be searched). Here too we lack a single fact supporting Investigator York's assertion that the maroon truck was Mr. Smith's.

Like the majority in *Dutton*, I would apply *Gonzales* because Investigator York's affidavit relies on conclusions without identifying any supporting facts.

**C. The officers couldn't reasonably rely on the affidavit's reference to an investigation.**

The government argues that the affidavit specifies the vehicle identification number of the truck, showing that officers had conducted an investigation regarding the maroon truck. Of course the officers had conducted an investigation. But the affidavit says nothing about any facts learned in the investigation. *See United States v. Clark*, 668 F.3d 934, 941 (7th Cir. 2012) ("While circumstantial evidence may be included in an affidavit to support probable cause, the fact of an FBI investigation alone is probative of nothing." (citation omitted)).

An officer executing the warrant would know only that Investigator York had investigated; the affidavit supplies no reason to think that this investigation had uncovered any facts tying the maroon truck to Mr. Smith or to the thefts. *See Gonzales*, 399 F.3d at 1230 ("[W]hen the underlying documents are 'devoid of factual support,' an officer cannot be said to

9

have relied on them in good faith." (quoting *United States v. Corral-Corral*, 899 F.2d 927, 939 (10th Cir. 1990))).

The government analogizes Investigator York's affidavit to the affidavit underlying the warrant in *United States v. Roach*, 582 F.3d 1192 (10th Cir. 2009). There we held that an affidavit had not shown probable cause to believe that the defendant was residing at a particular address. *Id.* at 1202–03. The affidavit identified various methods used to connect various suspects to fifteen separate residences: "checking for utilities information, driver's license records, real estate records, Wichita Police Department records, tax records, social security records, U.S. Postal Service records, interviews and/or surveillance." *Id.* at 1198. But the affidavit did not specify which of the methods had been used to identify the defendant's residence. *Id.* at 1202–03. Given this omission, we concluded that the list of methods was not enough for probable cause. *Id.* at 1203.

But we applied the good-faith exception, reasoning that an officer executing the warrant would have known that at least one of the listed methods had been used to identify the defendant's residence. *Id.* at 1204–05. This fact was enough to trigger the good-faith exception. *Id.*

No comparable fact exists here. The affidavit suggests that officers had information connecting Mr. Smith, the thefts, and the maroon truck. But the affidavit does not identify this information. Unlike the officers in

10

*Roach*, an executing officer here couldn't have known whether Investigator York had done anything to connect Mr. Smith to the truck or to verify what the informant had said.

The government suggests verification through Investigator York's statement that an oxygen tank had been confirmed stolen. But Investigator York didn't identify the confirming officers or say how they had confirmed the theft. *See* p. 4, above. Similarly Investigator York said that he had seen a vehicle used by Mr. Smith, but Investigator York didn't say who had verified this use or how this use had been verified. *See* p. 4, above.

Unlike the officers in *Roach*, an officer executing the warrant for the tracking device had no way of knowing whether *anyone* had done *anything* to (1) connect Mr. Smith to the maroon truck or (2) corroborate the confidential informant's accusation against Mr. Smith. In the absence of any such facts, the good-faith exception does not apply. *See United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005).

\* \* \*

The affidavit lacked

- any corroboration of a connection between the oilfield thefts and Mr. Smith or

- any facts connecting Mr. Smith to the maroon truck.

The affidavit thus did not support probable cause, and officers executing the warrant could not reasonably rely on the warrant. So the good-faith exception does not apply, and the district court erred in failing to suppress

11

the evidence uncovered through the tracking device. I would thus reverse

the district court's denial of Mr. Smith's motion to suppress.[3]

---

[3] Because the warrant lacked probable cause and the good-faith exception does not apply, I would not address whether the district court erred in denying Mr. Smith's request for a *Franks* hearing.